AO 102 (01/09) Application for a Tracking Warrant

# UNITED STATES DISTRICT COURT
## for the
Southern District of Ohio

In the Matter of the Tracking of  )
*(Identify the person to be tracked or describe*  )
*the object or property to be used for tracking)*  )
CELLULAR TELEPHONE NUMBER:  )  Case No.   2:22-mj-161
614-680-7233, SERVICE PROVIDED BY T-MOBILE  )
  )

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of 21 U.S.C. § 846. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☐ The person, property, or object is located in this district.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☑ Other: Court has jurisdiction pursuant to 18 U.S.C. Section 2703(c)(1)(A)

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
CELLULAR TELEPHONE NUMBER: 614-680-7233, SERVICE PROVIDED BY T-MOBILE

☑ Delayed notice of 30 days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Justin D Koble / US Postal Inspector
*Applicant's printed name and title*

Sworn to before me and signed in my presence.

Date: 3/9/2022

*Judge's signature*

City and state: Columbus, Ohio

Chelsey M Vascura / United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **[614-680-7233]**, | **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Justin D Koble, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by T-Mobile, an electronic communications service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), to require T-Mobile to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2. I am a United States Postal Inspector, employed by the U.S. Postal Inspection Service (USPIS) since July of 2014, and currently assigned to Columbus, Ohio, Field Office. I am a sworn Federal law enforcement officer empowered to investigate criminal activity involving or relating to the U.S. Postal Service (USPS) and/or U.S. Mail. I am currently assigned to the Prohibited Mail Narcotics team, which investigates the mailing of illegal narcotics, dangerous drugs, and their proceeds. I have received training in the detection and investigation of prohibited mailing offenses. Over the past two years, I have also worked in conjunction with the Homeland Security Investigations (HSI) and the Border Enforcement Security Taskforce (BEST) on cases involving illegal narcotics mailed from foreign countries.

3. As a Postal Inspector, I have also conducted online investigations, analyzed pen register and telephone toll data, analyzed financial records, executed controlled deliveries of controlled substances, interviewed witnesses, drafted and executed search warrants, seized illegal drugs and other evidence of drug violations in physical and electronic sources, processed seized evidence, and debriefed persons arrested and convicted of drug trafficking offenses regarding their illegal activity.

4. Through investigation and training, I have become familiar with the types and amounts of profits made by drug traffickers and the methods, language, and terms that are used to disguise their illegal activity. I know that persons engaged in drug trafficking require expedient forms of communication to maintain an adequate and consistent supply of drugs from sources, and to effectively market those drugs to customers.

## JURISDICTION

5. This I submit this affidavit, first, in support of an Application for a Warrant and an Order pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), authorizing law enforcement officers of the U.S. Postal Inspection Service to continue to ascertain the physical location of the cellular telephone assigned call number 614-680-7233, hereinafter referred to as the "**Target Phone-1**," service provided by T-Mobile, Inc. (hereinafter, "Service Provider" or "T-Mobile"), which is further described in Attachment A. This request includes but is not limited to E-911 Phase II data or other precise location information for a period of forty-five (45) days. Second, this Affidavit is submitted in support of an application under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 for a warrant requiring the Service Provider to disclose call information for Target Phone-1 including historical cell-site location information, retained by the Service Provider as further described in Attachment B, together hereinafter referred to as the "Requested Information." As a provider of wireless communications service, the Service Provider is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

6. Your affiant submits that there is probable cause to believe that the Requested Information will constitute or lead to evidence of offenses involving violations of 21 U.S.C. §§ 841(a)(1), 843(b) and 846: to wit, distributing and possessing with the intent to distribute controlled substances, using a telephone in furtherance of drug trafficking, and conspiring to

distribute controlled substances (the "Target Offenses"), as well as the identification of individuals who are engaged in the commission of the Target Offenses.

7. As this warrant seeks the historical collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

8. In December 2021, US Postal Inspectors in Columbus, Ohio seized the United States Postal Service (USPS) Priority Mail parcel bearing USPS tracking number 9505 5131 8438 1334 9188 34 (the "**Summit St PARCEL**"). The **Summit St PARCEL** was addressed to To: Thomas Leonard, 1337 Summit Street, Columbus, Ohio 43201" with a return address of "From: Tracie Thurmond, 2516 Segouia, La Verne, Ca 91750". The **Summit St PARCEL** weighed approximately 36 pounds, 12.6 ounces and was mailed from La Verne, CA 91750. A federal search warrant for the **Summit St PARCEL** was applied for and granted in the Southern District of Ohio. The search warrant was executed resulting in the seizure of approximately 11.45 kilograms of suspected methamphetamine from the **Summit St PARCEL**.

9. Through review of USPS business records, US Postal Inspectors identified the USPS Priority Mail parcel bearing tracking number 9505 5145 2328 1328 7941 35 (the "**18th Ave PARCEL**"). The **18th Ave PARCEL** was addressed to "To: Jason Keys, 1109 E. 18th ave, Columbus, Ohio 43211" with a return address of "From: Melyssa Pinedo, 1121 Belleville Ct, Claremont, Ca 91711". The **18th Ave PARCEL** weighed approximately 39 pounds, 3.2 ounces and was mailed from San Dimas, CA 91773. A federal search warrant for the **18th Ave PARCEL** was applied for and granted in the Eastern Division of California. The search warrant was executed resulting in the seizure of approximately 11.32 kilograms of suspected methamphetamine from the **18th Ave PARCEL**.

10. Through further review of USPS business records related to the seizures of the **Summit St PARCEL** and the **18th Ave PARCEL**, investigators identified several addresses in the Columbus, Ohio metro area which had received similar parcels (i.e., similar weight, mailed

from the same geographic area of California, and cash payment for postage). Many of these addresses were also found to have received USPS parcels from the Las Vegas, Nevada metro area.

11. Among the addresses, US Postal Inspectors identified the address 3180 Elim Manor Court, Unit 112, Columbus, Ohio 43232. USPS business records indicate between March 2021 and the present, this address has received at least fourteen USPS Priority Mail parcels from southern California and the Las Vegas, Nevada metro. Checks of law enforcement databases determined one of the current residents of the address to be Terrell Harris (**HARRIS**).

12. On February 25, 2022, US Postal Inspectors interdicted the USPS Priority Mail parcel bearing USPS tracking number 9505 5138 1083 2054 7715 16 ("**Elim Manor PARCEL #1**") upon arrival at the USPS Columbus, Ohio Processing and Distribution Center. The **Elim Manor Parcel #1** was observed to be addressed to "To: T. Harris, 3180 Elim Manor Court, Unit 112., Columbus, OH 43232" with a return address of "From: Steven Davis, 41423 Temeku Dr, Temecula, CA 92591". The **Elim Manor Parcel #1** weighed approximately 29 pounds, 4.2 ounces and was mailed from Wildomar Main Post Office, 21392 Palomar Street, Wildomar, CA 92595. The $136.80 in US postage affixed to the **Elim Manor PARCEL #1** was paid for in cash.

13. On February 25, 2025, at approximately 11:55 a.m., a US Postal Inspector, serving in an undercover capacity as a USPS Letter Carrier, delivered the **Elim Manor PARCEL #1** to 3180 Elim Manor Court, Unit 112, Columbus, OH 43232.

14. At approximately 12:37 p.m., investigators in surveillance positions in the surrounding area and with an eye on the main entrance to the building observed **HARRIS** arrive at the location at driving a gray Honda Accord bearing Ohio license plate HXY8736. **HARRIS** parked the Honda Accord outside of the main entrance to 3180 Elim Manor Court and entered the building. At approximately 12:50 am, **HARRIS** exited the main doors of 3180 Elim Manor Court carrying a large parcel matching the size and description of the **Elim Manor PARCEL #1**. **HARRIS** loaded this parcel into the back seat of his vehicle and departed the area.

15. **HARRIS** was followed via GPS Tracker and physical surveillance as he drove to a residence at 3244 E Fulton St, Columbus, Ohio 43227 and parked in the driveway. **HARRIS** and another black male, later determined from Ohio driver's license photo to be Ronnie White (**WHITE**), departed this residence in a 1997 Chevrolet pickup bearing Ohio license plate HHB2367 determined to be registered to **WHITE**. Surveillance was able to verify that the parcel

was still in the Honda Accord where it had been placed by **HARRIS** upon his picking it up at Elim Manor Court a short time before. This vehicle was lost by surveillance who waited at 3244 E Fulton St watching the Honda Accord and parcel. A short time later **HARRIS** and **WHITE** returned in same truck. **HARRIS** and **WHITE** got into the Honda Accord, with **WHITE** driving, and departed with the parcel. **HARRIS** and **WHITE** arrived at the Player's Lineup Barbershop (hereinafter the "**BARBERSHOP**") 5518 E. Livingston Avenue, Columbus, Ohio 43232, at approximately 2:51p.m.

16. Upon arrival at the **BARBERSHOP**, **WHITE** parked in the middle of the parking lot away from other vehicles and remained in the vehicle with the parcel. At approximately 2:57 p.m. a white Jeep Cherokee bearing Indiana license plate FL9954ABT, later determined to have been rented Wesley Durrell Johnson (**JOHNSON**) by **JOHNSON**, arrived at the **BARBERSHOP,** and drove directly in front of **WHITE** and **HARRIS**, who were still sitting in the Honda Accord. The Jeep Cherokee then parked along the curb south of the entrance to the **BARBERSHOP**. A black male, later identified by Ohio driver's license photo as Wesley Durrell Johnson (**JOHNSON),** then exited the Jeep and walked into the **BARBERSHOP**. At approximately 3:02 p.m., **WHITE** exited the Honda Accord, retrieved the parcel from the rear driver's side seat, and carried it on his shoulder into the **BARBERSHOP** while **HARRIS** remained inside the vehicle. At approximately 3:07 p.m., **WHITE** exited the **BARBERSHOP** without the parcel, returned to the Honda Accord, and departed the parking lot.

17. Law enforcement contacted Enterprise Rent a Car via a law enforcement portal and learned the white Jeep Cherokee bearing Indiana license plate FL9954ABT was rented to **JOHNSON**. **TARGET PHONE 1** was provided to Enterprise Rent a Car at the time of the rental. Additional checks of law enforcement databases associated **TARGET PHONE 1** to **JOHNSON**.

18. On March 1, 2022, US Postal Inspectors in Columbus, Ohio identified the USPS Priority Mail parcel bearing USPS tracking number 9505 5133 7399 2059 6991 86 (the "**Elim Manor PARCEL #2**"). On March 2, 2022, US Postal Inspectors interdicted the **Elim Manor PARCEL #2** upon arrival at the USPS Eastland Carrier Annex, 2601 Courtright Rd, Columbus, OH 43232. **The Elim Manor PARCEL #2** was observed to be addressed to "T. Harris, 3180 Elim Manor Court, Unit 112., Columbus, OH 43232" with a return address of "Erica Bradshaw, 24348 Brillante Dr, Wildomar, CA 92595". The parcel was a USPS Priority Mail large flat-rate

box weighing approximately 9 pounds, 6.6 ounces. USPS records indicate the **Elim Manor PARCEL #2** was mailed from the USPS Irvine Main Office, 15642 Sand Canyon Ave, Irvine, CA 92619 and the $21.50 in US postage affixed was paid for in cash.

19. On March 2, 2025, at approximately 11:22 a.m., a US Postal Inspector, serving in an undercover capacity as a USPS Letter Carrier, delivered the **Elim Manor PARCEL #2** to 3180 Elim Manor Court, Unit 112, Columbus, OH 43232. Upon knocking on the door of Unit 112, it was answered by a black female, later identified by Ohio driver's license photo, as Wilma Bradley (**BRADLEY**). **BRADLEY** took delivery of the parcel into the apartment and the undercover US Postal Inspector departed without further incident.

20. At approximately 12:33 p.m., surveillance units observed the Honda Accord (HXY8736) known to be operated by **HARRIS** arrive at 3180 Elim Manor Court. **HARRIS** exited the vehicle and entered 3180 Elim Manor Court. At approximately 12:38 p.m., **HARRIS** exited the building carrying a USPS parcel matching the size and description of the **Elim Manor PARCEL #2**. **HARRIS** placed the parcel into the rear driver's seat of the Honda Accord and departed the area with surveillance units following.

21. At approximately 12:55 p.m., **HARRIS** arrived at the Century City Shopping Center located at the northeast corner of E Livingston Ave and Brice Rd. **HARRIS** parked in front of the Big Lots at 6300 E Livingston Ave, Reynoldsburg, Ohio 43068. **HARRIS** was observed meeting with **WHITE** who is driving a green Chevy pickup truck bearing Ohio license tag HHB2367. The Chevy truck was observed to have numerous trash and scrap type items piled into the bed. Both vehicles then departed the parking lot and drove directly to the **BARBERSHOP** where additional surveillance units were pre-positioned in anticipation of the parcel's arrival.

22. **JOHNSON** was already at the **BARBERSHOP**, having arrived a short time before in the white Jeep Cherokee rental vehicle.

23. **HARRIS** and **WHITE** parked their respective vehicles in the large parking lot in front of the **BARBERSHOP**. **HARRIS** and **WHITE** both exit their vehicles and begin talking. **HARRIS** retrieved a white trash bag with red ties containing what appears to be the parcel and handed it to **WHITE** who then takes the bag containing the parcel into the **BARBERSHOP** through the main front door.

24. A few moments later **WHITE** exited the **BARBERSHOP** and met with **JOHNSON** on the sidewalk in front of the **BARBERSHOP**. The two conversed for a short time before going back into the **BARBERSHOP**. A few minutes later **WHITE** emerged from the **BARBERSHOP** carrying a white trash bag similar to the one just taken in believed to contain the parcel. However, at this point the bag seemed noticeably lighter in weight. **WHITE** walked to his Chevy truck, removed a large cooler which is given to **HARRIS** and placed in the rear seat of the Honda Accord. **WHITE** then placed the trash bag deep into the bed of the truck on the passenger side and a short time later both **HARRIS** and **WHITE** departed the lot with surveillance units following. **WHITE** stopped near the curb at 5337 Ivyhurst Dr, Columbus, Ohio 43232 and an unknown black male got into the passenger seat of the truck.

25. Surveillance units followed the Chevy truck to the SWACO Landfill/Dump facility located at 4239 London-Groveport Rd, Grove City, Ohio 43123. Surveillance units maintain constant visual of the Chevy truck as it pulled up to one of the large dumpsters for public dumping and emptied the contents of the bed of the truck into the dumpster. Immediately upon the Chevy truck departing, with both **WHITE** and the unknown black male, law enforcement secured the white trash bag which had just been dumped by **WHITE** and the unknown black male.

26. The bag was found to contain two (2) opened/empty USPS Priority Mail large flat-rate mailing boxes. One of these boxes still had the mailing label affixed identifying it as the **Elim Manor PARCEL #2** which had just been delivered to **HARRIS** a short time before and was believed to have been taken into the **BARBERSHOP** by **WHITE**.

27. Both of these boxes were secured and transported to a nearby law enforcement facility where the interior of each parcel was tested for narcotics residue using the MX908 Drug Hunter device. The parcel box identified as the **Elim Manor PARCEL #2** box, via the still affixed USPS label, showed a positive test result for cocaine. The other box, which had the USPS label torn off, showed a positive result for methamphetamine.

## CELLULAR TELEPHONE PROVIDER RECORDS

28. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-

site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

29. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective and historical basis about the **Target Phone-1**. Based on my training and experience, I know that for each communication a cellular device with its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

30. Based on my training and experience, I know that some service providers also can collect per-call measurement data, which some refer to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

31. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap

devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

32. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify **Target Phone-1** user or users and may assist in the identification of coconspirators and/or victims.

## AUTHORIZATION REQUESTED

33. Pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), it is requested that the Court issue a Warrant and Order authorizing law enforcement officers of the Investigative Agency to obtain the Requested Information for a period of 45 days, as well as historical information from 60 days before the date of the warrant through and including the date on which the Service Provider begins disclosing prospective information.

34. There is "reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result." 18 U.S.C. § 3103a(b)(1). Providing prior notice to the subscriber or user of the **Target Phone-1** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from prosecution.

35. The execution of this Warrant will not result in the seizure of any tangible property or any wire or electronic communication (as defined in 18 U.S.C. § 2510). To the extent that the warrant authorizes the seizure of any stored wire or electronic information, that seizure is expressly authorized by 18 U.S.C. § 2703(c)(1)(A).

36. It is further requested that the Court direct the Service Provider to assist law enforcement officers of the Investigative Agency by providing all information, facilities and technical assistance needed to ascertain the Requested Information, and further direct the Service

Provider for the **Target Phone-1**, to initiate a signal to determine the location of the **Target Phone-1** on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement officer serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of the **Target Phone-1** for a period of forty-five (45) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the Investigative Agency.

37. It is further requested that the Application(s), Order(s), Warrant(s) and this Affidavit, as they reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against flight, and better ensure the safety of law enforcement officers and others, except that working copies may be served on Special Agents and other investigative and law enforcement officers of the Investigative Agency ,federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and the Service Provider as necessary to effectuate the Court's Order.

38. In accordance with 18 U.S.C. § 3103a(b), I request that the Court order delay of notification of the execution of the order for a period not to exceed 30 days (or some lesser period) because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation. It is request that such period of delay therefore be extended by the court for good cause shown, subject to the condition that the extensions should only be granted upon an updated showing of the need for further delay.

39. It is further requested that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Phone-1** outside of daytime hours, including when the **Target Phone-1** leaves the Northern District of Ohio; all of said authority being expressly limited to ascertaining the physical location of the **Target Phone-1** and other metadata and expressly excluding the contents of any communications conducted by the user(s) of the **Target Phone-1**.

40. It is further requested that the Court's Order apply not only to the **Target Phone-1** with the same subscriber(s) listed herein, but also to: (a) the **Target Phone-1** with a different electronic serial number ("ESN") or a different international mobile equipment identity number ("IMEI") or (b) the **Target Phone-1** with a different subscriber(s) but the same ESN or IMEI, and

(c) any changed telephone number(s) subsequently assigned to the same ESN or IMEI used by the **Target Phone-1** within the 45-day period.

41. It is further requested that the Service Provider, its affiliates, officers, employees, and agents not disclose the existence of the Court's Order, or the existence of the investigation, to the listed subscriber or to any other person, unless and until authorized to do so by the Court.

42. It is further requested that, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of thirty (30) days after receipt of the requested information.

## CONCLUSION

43. Your Affiant, therefore respectfully requests (1) that the attached Warrant authorizing law enforcement officers of the Investigative Agency to continue to acquire the precise location of the **Target Phone-1** for a period of 45 days be issued, and the attached Warrant directing the Service Provider to provide the information identified in the search warrant.

## REQUEST FOR SEALING

44. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

_____
Justin D Koble
US POSTAL INSPECTOR

Sworn and subscribed to me this __9th__ day of March 2022

_____
CHELSEY M. VASCURA
U.S. MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **614-680-7233**, with listed subscriber(s) **Wesley Johnson**, whose wireless service provider is **T-Mobile**, a company headquartered at **4 Sylvan Way, Parsippany New Jersey 07054**.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of **T-Mobile.**

## ATTACHMENT B

### Particular Things to be Seized

I.            **Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **T-Mobile. T-Mobile** is required to disclose the Location Information to the government. In addition, **T-Mobile** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **T-Mobile's** services, including by initiating a signal to determine the location of the Target Cell Phone on **T-Mobile's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II.            **Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 21, U.S.C. Section 841(a)(1), that is, knowingly and intentionally distributing and possessing with the intent to distribute Cocaine; and Title 21, U.S.C. Section 846; that is, conspiracy to distribute methamphetamine involving **Wesley Durrell Johnson**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.